*836 OPINION OF THE COURT
Elisa S. Koenderman, J.
Charged by information with unlawful possession of personal identification information in the third degree (Penal Law § 190.81), criminal possession of marihuana in the fifth degree (Penal Law § 221.10 [1]), and unlawful possession of marihuana (Penal Law § 221.05), defendant moves in an omnibus motion for the following: (1) dismissal of the first count for facial insufficiency, (2) a Mapp/Dunaway hearing, (3) a Huntley /Dunaway hearing, (4) preclusion of statement or identification testimony, and (5) a Sandoval hearing. The motion is decided as follows.
The arresting officer alleges that, on July 9, 2007, he observed defendant holding loose marihuana inside a public playground, and recovered seven pieces of paper from defendant’s wallet (presumably after a search incident to arrest). The arresting officer additionally alleges that he observed personal identification information written on the pieces of paper, which information included three credit card numbers with expiration dates and security codes, and one Social Security number. The officer further alleges that defendant stated to him, “they are credit card numbers but I don’t know whose they are.”
Defendant argues that the charge of possessing personal identification information is facially insufficient on several bases. First, defendant argues that the information is facially insufficient because it does not allege that the personal identification information was actually used or attempted to be used in a crime. Defendant secondarily argues that the information is facially insufficient because it does not set forth what specific crime was intended to be committed using the personal identification information (hereinafter the numbers). Lastly, defendant argues that the information is facially insufficient because it does not allege facts of an evidentiary nature to support the conclusion that the numbers were intended to be used in the commission of a crime and that defendant had knowledge that the numbers were intended to be used in the commission of a crime.
The court is unpersuaded and finds that the instant information is facially sufficient, inasmuch as it substantially conforms to the statutorily prescribed form and content (which requirement is not presently in dispute) and contains allegations in the factual portion that provide reasonable cause to believe defendant committed the offenses charged, as well as nonhearsay allegations, which, if true, establish every element of the offense charged and defendant’s commission thereof.
*837 Facial Sufficiency
An information is facially sufficient if it meets three requirements. First, it must substantially conform to the formal requirements of CPL 100.15. Additionally, the factual portion and any accompanying depositions must provide reasonable cause to believe the defendant committed the offense charged, as well as nonhearsay factual allegations of an evidentiary character which, if true, establish every element of the offense charged and defendant’s commission thereof (CPL 100.15 [3]; 100.40 [1]; see People v Dumas, 68 NY2d 729 [1986]; see also People v Alejandro, 70 NY2d 133 [1987]).
While the requirement of nonhearsay allegations has been described as a “much more demanding standard” than a showing of reasonable cause alone (People v Alejandro, 70 NY2d at 139, quoting 1968 Rep of Temp Commn on Rev of Penal Law and Crim Code, Introductory Comments at xviii), it is nevertheless a much lower threshold than the burden of proof beyond a reasonable doubt at trial (People v Henderson, 92 NY2d 677, 680 [1999]; People v Hyde, 302 AD2d 101 [1st Dept 2003]). Thus, “The law does not require that the information contain the most precise words or phrases most clearly expressing the charge, only that the crime and the factual basis therefor be sufficiently alleged” (People v Sylla, 7 Misc 3d 8, 10 [App Term, 2d Dept 2005]). Additionally, where the factual allegations contained in an information “give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading” (People v Casey, 95 NY2d 354, 360 [2000]; see also People v Konieczny, 2 NY3d 569 [2004]; People v Jacoby, 304 NY 33, 38-40 [1952]; People v Knapp, 152 Misc 368, 370 [1934], affd 242 App Div 811 [1934]; People v Shea, 68 Misc 2d 271, 272 [1971]; People v Allen, 92 NY2d 378, 385 [1998]; People v Miles, 64 NY2d 731, 732-733 [1984]).
Unlawful Possession of Personal Identification Information
A person is guilty of unlawful possession of personal identification information when he or she “knowingly possesses a . . . credit card account number or code ... of another person knowing such information is intended to be used in furtherance of the commission of a crime defined in this chapter” (see Penal Law § 190.81). This law was enacted in 2002 as part of a bill criminalizing identity theft at a time when New York State had *838 a total of 12,698 victims of identity theft statewide, 5,888 of which were in New York City, according to the Federal Trade Commission (FTC) (see FTC, Identity Theft Data Clearinghouse 2002, Identity Theft Victim Complaint Data, New York, Jan. 1-Dec. 31, 2002). When the bill preceding enactment of Penal Law § 190.81 was considered by the Legislature, the Legislature acted while knowing that New York State was second only to California in numbers of identity theft complaints, and that existing statutes were inadequate to address a swiftly expanding problem[1] with serious financial consequences (see Assembly Mem in Support, 2002 McKinney’s Session Laws of NY, at 2093). Prior to enactment of Penal Law § 190.81 and its correlative statutes, no laws specifically criminalizing identity theft were yet in effect in New York, and prosecutions were instead brought under larceny statutes, with a resulting lack of consensus as to whether a sequence of numbers was “property” when it was not on the actual plastic card issued by an authorized entity (see People v Tansey, 156 Misc 2d 233 [Sup Ct, NY County 1992]; People v Molina, 145 Misc 2d 612 [Crim Ct, Queens County 1989]; compare People v Johnson, 148 Misc 2d 103 [Crim Ct, NY County 1990]; Matter of Reinaldo O., 250 AD2d 502 [1998]).
A plain reading of the statute clearly reveals that a person need not actually use or attempt to use personal identification information to commit this crime; rather, the charge requires only that a defendant possess personal identification information and have knowledge that such information is intended to be used in commission of a crime. Following the well-settled rule that penal statutes are to be interpreted according to the fair import of their terms (Penal Law § 5.00; see People v Ditta, 52 NY2d 657 [1981]), this court declines to contract the parameters of what conduct constitutes a violation of the statute by expanding the statute’s requirements. Possession of any information included in Penal Law § 190.77 (1) is the gravamen of the complaint. Accordingly, defendant’s contention that the charge is facially insufficient because it fails to allege that the numbers were actually used for a crime, an attempted crime, or for any purpose at all is without merit.
*839 Similarly, defendant’s next argument — that the charge is insufficient on its face because it lacks specificity as to what particular crime was intended to be committed with the numbers in defendant’s possession — is unpersuasive. As with defendant’s preceding argument, the court is neither empowered nor inclined to expand the statute to encompass circumstances beyond its purview. Penal Law § 190.81 does not require allegations or proof of actual or attempted use of the numbers, nor does it require specification of what crime or crimes were intended to be committed with the numbers. The burglary statutes provide guidance on this issue, in that the prosecution is required to prove that a defendant acted “with intent to commit a crime therein” (see Penal Law § 140.20 et seq.), but the People are not obligated to specify which crime in particular (see People v Mackey, 49 NY2d 274 [1980]; People v Gaines, 74 NY2d 358 [1989]). Thus, while an accusatory instrument charging unlawful possession of personal identification information must provide facts of an evidentiary character to support the conclusion that defendant had knowledge that the possessed information was intended to be used in a crime, a specific crime that is intended to be committed does not need to be alleged at the pleading stage. Such proof may not even be necessary at trial; again, as in burglary prosecutions, a defendant’s unspecified criminal purpose or intent, as inferred from the circumstances, may be sufficient (see People v Gaines, 74 NY2d 358 [1989]).
Lastly, defendant claims that the charge is facially insufficient because the information fails to set forth evidentiary facts showing the basis for the conclusion that defendant knew the numbers were intended to be used in a crime, and that the numbers actually were intended to be used in the commission of a crime. In support of this argument, defendant correctly notes that there is no statutory presumption regarding defendant’s mental state, akin to the presumption of intent for criminal possession of stolen property under Penal Law § 165.55. However, in putting forth this argument, defendant overlooks the fact that the culpable mental state for this offense, knowledge, may be inferred from the circumstances. Knowledge, as a required element, is properly and frequently inferred in cases involving other types of offenses. Knowledge as to the weight of drugs (see People v McEniry, 240 AD2d 681 [2d Dept 1997], lv denied 91 NY2d 876 [1997]), knowledge that stolen property is, in fact, stolen (see People v Walker, 166 AD2d 911 [4th Dept *840 1990], lv denied 77 NY2d 845 [1991]), and knowledge that drugs in one’s possession are actually in one’s possession (see People v Roque, 108 Misc 2d 965 [1981]) are but a few examples of instances in which no more than circumstantial proof of knowledge is required at trial. Since the standard of proof is so much lower at the pleading stage than at trial (People v Henderson, 92 NY2d 677 [1999], supra-, People v Hyde, 302 AD2d 101 [2003], supra), it stands to reason, as numerous cases have held (see People v Dixson, 9 Misc 3d 358 [Crim Ct, NY County 2005]; see also People v Cooks, 230 AD2d 683 [1st Dept 1996]), that a facially sufficient accusatory instrument may properly include nonhearsay evidentiary facts that are established circumstantially.
Looking to the evidentiary facts alleged in the information at issue, the only logical and reasonable inference to be drawn is that the defendant either had knowledge of his own criminal purpose in possessing the numbers, or had knowledge that the numbers eventually would be criminally employed by another person at some point in the future. It is alleged that defendant was observed to be in possession of pieces of paper inscribed with credit card numbers whose proper owners, by defendant’s own statement, are unknown to the defendant. It is further alleged that the pieces of paper also bore the security codes for the credit card accounts, as well as a Social Security number. It is well within the realm of reason and logic to infer that a person who possesses such personal information belonging to strangers has a criminal purpose, or will furnish the numbers to someone who has his or her own criminal purpose.
Inferring knowledge of criminal intent is especially warranted when a person is in possession of a stranger’s Social Security number, because it is common knowledge that, in the wrong hands, a Social Security number is the key to committing all kinds of fraud, larceny, impersonation and other offenses, with serious, long-lasting consequences.[2] Misuse of Social Security numbers is a problem of national scope, prompting the federal government to take action, in the form of hearings and legislation.
“Identity theft has become a serious concern in our information-based economy. Millions of consumers are victimized by this crime every year. Generally speaking, there are two varieties of identity theft: *841 the takeover or misuse of existing credit card, debit card, or other accounts (‘existing account fraud’); and the use of stolen information to open new accounts in the consumer’s name (‘new account fraud’). New account fraud, although less prevalent, typically causes considerably more harm to consumers in out-of-pocket expenses and time necessary to repair the damage . . .
“Identity theft has many causes, . . . [including] the availability of SSNs, with which identity thieves can open new accounts in consumers’ names.” (Identity Theft: Innovative Solutions for an Evolving Problem, Prepared Statement of Federal Trade Commn before Subcomm on Terrorism, Technology, and Homeland Security of Senate Comm on Judiciary, Mar. 21, 2007, http://www.ftc.gov/os/testimony/ P065409identitytheftsenate03212007.pdf.)
In New York State, the Legislature has addressed the heightened risks surrounding disclosure of Social Security numbers by recently enacting General Business Law § 399-dd, “Confidentiality of social security account number,” noting that “the widespread public exposure of personal information, especially Social Security account numbers, plays a significant role in identity theft [and] a more widespread approach is needed to better protect the privacy and integrity of this data” (Senate Introducer Mem in Support, Bill Jacket, L 2006, ch 676).
Thus, the inference of knowledge is so strong as to be all but inescapable. Unlike circumstances where a defendant possesses a stranger’s actual plastic credit card, for which there may be a reasonable explanation such as temporary and innocent possession after finding lost property, there is no reasonable explanation for the possession of a stranger’s credit card numbers, security codes or Social Security number (unless, of course, the possessor is a financial institution, legitimate merchant or an authorized agent thereof). When a person possesses a stranger’s Social Security number and credit card numbers, and the numbers have been handwritten, transcribed or otherwise imprinted onto separate pieces of paper, the very fact that the numbers have been copied demonstrates an affirmative step in furtherance of a reasonably inferred criminal purpose. The numbers could have been copied from any number of sources— actual credit cards, receipts, account summaries, the Internet— but however unplanned or innocent the original access or *842 exposure to the numbers might have been, all innocence was erased by the overt act of copying the numbers onto paper, which act “went beyond the stage of mere preparation” (People v Ciardullo, 106 AD2d 14, 17 [2d Dept 1984]). Further, once the numbers were copied, whether by defendant or by another, defendant then took the inculpatory step of retaining the numbers in his wallet, conventionally a secure location where important information necessary for future activity is kept. Taken together, the factual allegations provide ample basis for concluding defendant had knowledge that the numbers were intended to be used in commission of a crime. Whether such criminal purpose is imminent or future is of no moment, as there is no requirement of law that unlawful intent must be immediate or contemporaneous (see People v Glenn, 39 AD2d 904 [1st Dept 1972]). Additionally, intent to use the numbers unlawfully is not an element of the offense; rather, the criminal state of mind for this offense is knowledge that the numbers are intended to be used for any crime, at any time, in any place and manner, by any person, none of which have to be specifically alleged or proven.
Accordingly, the charge of unlawful possession of personal identification information presently challenged is facially sufficient, and the relevant portion of defendant’s motion is denied. Of course, the People still have the burden of proving all elements by proof beyond a reasonable doubt at trial (see People v Miles, 64 NY2d 731 [1984]), but at the pleading stage, the People’s burden has been met.
Remaining Motions
Defendant’s motion to suppress physical evidence is granted to the extent of ordering a Mapp/Dunaway hearing.
Defendant’s motion to suppress statements is granted to the extent of ordering a Huntley/Dunaway hearing.
Defendant’s request for preclusion of identification testimony for which proper notice has not been provided is granted, pursuant to CPL 710.30 (3).
Defendant’s Sandoval application is deferred to the trial court.

. Since then, the incidence of identity theft has grown statewide, with last year’s total number of identity theft victims increasing to 16,452, 33% of which were victims of credit card fraud (see FTC, Identity Theft Data Clearinghouse 2006, Identity Theft Victim Complaint Data, New York, Jan. 1-Dec. 31, 2006, http://www.ftc.gov/bcp/edu/microsites/idtheft/downloads/ CY2006/New%20York%20CY-2006.pdf).

. A recent LexisNexis search for New York Times articles addressing the role of Social Security numbers in identity theft resulted in over 100 results.