**UNITED STATES, Appellee,**

v.

**Private First Class Sean E. FIRTH, United States Army, Appellant.**

**ARMY 20050384.**

U.S. Army Court of Criminal Appeals.

27 Sept. 2006.

For Appellant: Colonel John T. Phelps II, JA; Lieutenant Colonel Kirsten V.C. Brunson, JA; Major Charles L. Pritchard, Jr., JA (on brief).

For Appellee: Lieutenant Colonel Natalie A. Kolb, JA; Lieutenant Colonel Francis C. Kiley, JA; Captain Michael C. Friess, JA; Captain Johnny B. Davis, JA (on brief).

Before SCHENCK, ZOLPER, and WALBURN, Appellate Military Judges.

## OPINION OF THE COURT

ZOLPER, Judge:

A military judge sitting as a special court-martial convicted appellant, consistent with his pleas, of attempting to obtain services under false pretenses,[1] failing to go to his appointed place of duty, larceny (two specifications), burglary, and wrongfully using a credit card in violation of Tex. Penal Code Ann. § 32.31(b)(1)(A), in violation of Articles 80, 86, 121, 129, and 134, UCMJ, 10 U.S.C. §§ 880, 886, 921, 929, and 934. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for seven months, forfeiture of $822.00 pay per month for seven months, and reduction to Private E1. This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

Appellate defense counsel assert two assignments of error; both merit discussion and relief. The defense claims the military judge erred by accepting appellant's guilty pleas to larceny (Specification 2 of Charge II) and burglary with intent to commit larceny

(the Specification of Charge III) "where appellant intended only to temporarily appropriate [Private E2 (PV2) ML's] credit card number." We find appellant's pleas partially improvident to the larceny and burglary offenses, albeit for reasons other than those argued by the defense. We hold appellant's copying the numbers imprinted on PV2 ML's Visa check card does not constitute larceny under Article 121,[2] and, under the circumstances of this case, does not satisfy the intent element of burglary (as charged) under Article 129.[3] Accordingly, we will modify Specification 2 of Charge II and the Specification of Charge III to comport with the facts elicited during the plea inquiry.

Additionally, appellate counsel agree that the military judge erred by failing to dismiss the offense of wrongful use of a credit card in violation of Tex. Penal Code Ann. § 32.31(b)(1)(A) (Specification 1 of Charge IV) "as an unreasonable multiplication of charges with" the offense of attempting to obtain services by false pretenses (Specification 2 of Charge IV). We agree, and will set aside and dismiss Specification 1 of Charge IV. In light of the relief granted regarding findings, we will reassess the sentence.

### Facts

Appellant pleaded guilty to, and was convicted of, "steal[ing] credit card information and a pair of gloves, of some value, the

---

1. Appellant pleaded guilty to obtaining services under false pretenses in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ]. However, based on facts elicited during the providence inquiry, the military judge found appellant's pleas provident only to the lesser-included offense of attempting to obtain services under false pretenses in violation of Article 80, UCMJ.

2. As this particular case illustrates, the government had alternative offenses with which to charge appellant. Federal and state law criminalizes credit card theft and fraud. *See, e.g.,* 15 U.S.C. § 1644 ("Fraudulent use of credit cards"); 18 U.S.C. § 1029 ("Fraud and related activity in connection with access devices," i.e., account numbers or other means of account access); 18 U.S.C. § 13 ("Assimilative Crimes Act"); *Soliman v. Gonzales,* 419 F.3d 276, 282–85 (4th Cir.2005) (discussing Va.Code Ann. §§ 18.2–192 ("Credit card theft") and 18.2–195 ("Credit card fraud")); *United States v. Scott,* 250 F.3d 550,

552 (7th Cir.2001) (discussing 18 U.S.C. § 1029); *United States v. Bice-Bey,* 701 F.2d 1086, 1091–92 (4th Cir.1983) (discussing 15 U.S.C. § 1644). Furthermore, appellant did more than just copy the Visa check card number; he wrongfully used it to purchase an airline ticket. The government charged appellant with wrongful use of a credit card in violation of Tex. Penal Code Ann. § 32.31(b)(1)(A), and with obtaining services under false pretenses in violation of Article 134, UCMJ.

3. To be punished under Article 129, UCMJ, an accused must break and enter the house of another at night with the "intent to commit an offense punishable under Articles 118 through 128, except 123a." *Manual for Courts-Martial, United States* (2005 ed.) [hereinafter *MCM,* 2005], Part IV, para. 55(c)(1). Additionally, the government can charge as the intent element of burglary other crimes which necessarily include Articles 118–128 as lesser-included offenses. *See id.*

property of PV2 [ML]" (Specification 2 of Charge II), and burglarizing PV2 ML's barracks room with intent to commit larceny therein (the Specification of Charge III). The larceny alleged in Specification 2 of Charge II serves as the *sine qua non* for the burglary alleged in the Specification of Charge III.

During the providence inquiry, appellant admitted that, shortly before midnight on 27 February 2005, he entered PV2 ML's barracks room without permission "while [PV2 ML] was asleep." Appellant told the military judge that, upon entering PV2 ML's room, he intended to "find some type or some sort of credit card" and "get the numbers off of it[,] and ... to get the gloves." Appellant admitted he "took or stole ... a credit card and a pair of gloves" from PV2 ML's room. However, he did not take the card itself, but merely wrote down PV2 ML's Visa check card [4] number. Appellant later called Continental Airlines and used the card number to reserve an airline ticket. Although appellant "had reserved it and paid for it," the airlines did not actually issue appellant a ticket because appellant purchased an "e-ticket." [5] Appellant, however, did not use the e-ticket because he was subsequently taken into custody for his misconduct.

### Discussion

■ The Courts of Criminal Appeals review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Abbey*, 63 M.J. 631, 632 (Army Ct.Crim.App.2006) (citing *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996)). On appeal, we will not overturn a military judge's acceptance of a guilty plea unless the record of trial reveals a substantial basis in law and fact for questioning the military judge's decision. *United States v. Adams*, 63 M.J. 223, 226 (C.A.A.F.2006) (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). A legally and factually sound providence inquiry must establish that the accused admits and believes he is guilty of his crimes, and provide a developed factual predicate, in declaratory fashion, that objectively supports, and is consistent with, the guilty plea. Rule for Courts–Martial [hereinafter R.C.M.] 910(e); *United States v. Simmons*, 63 M.J. 89, 92 (C.A.A.F.2006); *United States v. Barton*, 60 M.J. 62, 64 (C.A.A.F.2004); *United States v. Morris*, 58 M.J. 739, 742–43 (Army Ct.Crim.App.2003).

In the military, Article 121, UCMJ, codifies the offense of larceny and provides:

> Any person subject to this chapter who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind ... with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, steals that property and is guilty of larceny....

When Congress enacted Article 121, it intended to "create the single offense of 'larceny,' and ... 'eliminate[ ] the ... confusing distinctions previously drawn between common[-]law larceny, embezzlement, and false pretenses.' " *United States v. Antonelli*, 35 M.J. 122, 125 (C.M.A.1992) (quoting *United States v. Buck*, 3 U.S.C.M.A. 341, 343, 12 C.M.R. 97, 99, 1953 WL 2188 (1953)). At the time Congress consolidated these offenses under the UCMJ, it "did not enlarge the scope of the statutory crime of 'larceny' to"

---

**4.** "A Visa check card is a type of 'debit' card that looks similar to a credit card but acts like a check because the purchase amount is deducted from the cardholder's checking account." VISA, Check Card, *at* http://us a.visa.com/personal/cards/deb it/index.html?it=h4|®personal®cards®index©html|CheckĊard (last visited 18 Sept. 2006). In this opinion, we will use "check card" and "credit card" interchangeably.

**5.** An electronic ticket or "e-ticket" is:
a paperless electronic document used for ticketing passengers, particularly in the commercial airline industry. ... When a customer books a flight by telephone or using the Web, the details of the reservation are stored in a computer.... When checking in at the airport, the passenger simply presents positive identification. Then necessary boarding passes are issued, and the passenger can check luggage and proceed through security to the gate area. SearchSMB.com, Definitions, e-ticket, *at* http://searchsmb.techtarget.com/s Definition/0,,sid44_gci780616,00.html (last visited 18 Sept. 2006).

make punishable more than what was covered by "common[-]law larceny, embezzlement, [and] false pretenses." *Buck*, 3 U.S.C.M.A. at 343, 12 C.M.R. at 99. Article 121, therefore, "does not include conduct that could not have been reached by any of the three crimes upon which it was based." *Antonelli*, 35 M.J. at 126 (citing *United States v. McFarland*, 8 U.S.C.M.A. 42, 23 C.M.R. 266, 1957 WL 4477 (1957)). To determine the scope of Article 121, we must construe this military, criminal statute "in light of the common-law meaning of those offenses." *United States v. Mervine*, 26 M.J. 482, 483 (C.M.A. 1988); *United States v. Sanchez*, 54 M.J. 874, 877 n. 4 (Army Ct.Crim.App.2001) (citing *Carter v. United States*, 530 U.S. 255, 264–65, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000)).

At common law, larceny was generally defined as the trespassory taking and carrying away of personal property from the possession of its owner with the intent to permanently deprive the owner of the property. *United States v. Morgan*, 805 F.2d 1372, 1376 (9th Cir.1986) (citing *Bell v. United States*, 462 U.S. 356, 358–60, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)); *United States v. Waronek*, 582 F.2d 1158, 1161 (7th Cir.1978); WAYNE R. LAFAVE, CRIMINAL LAW 795 (3d ed.2000); ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 292 (3d ed.1982); *see* WILLIAM WINTHROP, MILITARY LAW AND PRECEDENTS 685–87 (2d ed.1920). Furthermore, the object of common-law larceny had to "be tangible and capable of being possessed." *Mervine*, 26 M.J. at 483. "[C]ommon-law larceny was limited to thefts of tangible personal property." *Bell*, 462 U.S. at 360, 103 S.Ct. 2398; *see United States v. Sierra*, 62 M.J. 539, 542 (Army Ct.Crim.App.2005) (theft of services not an offense under Article 121); LAFAVE, *supra*, at 806 ("At common law one could not steal intangible personal property. . . .").[6]

An accused must objectively support his guilty plea to larceny by articulating a factual predicate that amounts to wrongfully, taking, obtaining, or withholding "money, personal property, or [an] article of value of any kind," from its owner, with the intent to steal. *MCM*, 2005, Part IV, para. 46a(a); *Mervine*, 26 M.J. at 483 (stating object of larceny must "be tangible and capable of being possessed"); *United States v. Albright*, 58 M.J. 570, 572 (Army Ct.Crim.App.2003) (stating same); *cf. Sanchez*, 54 M.J. at 878 (holding automatic teller machine processing fees not the subject of larceny under Article 121, UCMJ). Therefore, during the providence inquiry, the accused must demonstrate to the military judge that he "engaged in a wrongful taking, obtaining or withholding of *tangible property* from the *possession* of the owner." *United States v. Holley*, 42 M.J. 779, 781 (N.M.Ct.Crim.App.1995) (citing *Mervine*, 26 M.J. at 483).

In *United States v. Abeyta*, 12 M.J. 507 (A.C.M.R.1981), our court held that taxicab services cannot be the subject of larceny under Article 121. In reaching this conclusion we particularly noted:

> Historically, the definition of property that can be the subject of larceny has been limited to tangible items. . . . The broadened scope of the law has come from statutory changes, not judicial changes. We conclude that Article 121, based as it is on the New York Penal Code, does not include services within the class of property that can be stolen.

*Abeyta*, 12 M.J. at 508 (internal citations omitted); *see Sierra*, 62 M.J. at 542 (citing *Abeyta* and stating, "If the false pretense is used to obtain services rather than tangible property, the offense is not a larceny, but a theft of services in violation of Article 134, UCMJ."). Citing the Air Force Board of Review with approval, we also "concluded that the terms 'money, personal property, or

---

**6.** In contrast, "Article 108, UCMJ, does not grow out of the same common[-]law background" as Article 121. *United States v. Walter*, 43 M.J. 879, 882 (N.M.Ct.Crim.App.1996), *pet. denied*, 46 M.J. 113 (C.A.A.F.1996). The term "military property" used in Article 108, 10 U.S.C. § 908 ("Military property of the United States—sale, loss, damage, destruction, or wrongful disposition") is broadly defined as "*all* property, real or personal, owned, held, or used by one of the armed forces of the United States." *MCM*, 2005, Part IV, para. 32c(1) (emphasis added); *Walter*, 43 M.J. at 882–83 (quoting *United States v. Hemingway*, 36 M.J. 349, 351 (C.M.A.1993)). Such a "broad, expansive definition" of military property has "no tangibility requirement." *Walter*, 43 M.J. at 883.

article of value,' as used in Article 121, were not meant to encompass items not having a corporeal existence." *Abeyta*, 12 M.J. at 508. Those terms were meant to encompass items that are "tangible and capable of being possessed." *Mervine*, 26 M.J. at 483; *Bell*, 462 U.S. at 360, 103 S.Ct. 2398. Consequently, in appellant's case we must decide whether copying numbers imprinted on a credit card constitutes stealing those numbers within the ambit of Article 121, UCMJ. The numbers on PV2 ML's Visa check card appear to fall somewhere on the continuum between tangible personal property and services. State courts and our sister court have clarified this area of the law of theft.

The New York State Supreme Court determined telephone calling card " 'numbers[,] in and of themselves[,] are not tangible property[;' therefore,] the numbers are not capable of being possessed within the meaning of the [criminal possession] statute." *People v. Tansey*, 156 Misc.2d 233, 593 N.Y.S.2d 426, 430 (N.Y.Sup.Ct.1992) (quoting *People v. Molina*, 145 Misc.2d 612, 547 N.Y.S.2d 546, 549 (N.Y.Crim.Ct.1989)). The Court of Appeals of Virginia noted, "A credit card is a token of credit extended to the cardholder. Thus, at common law only the card itself, not the line of credit it represented, could be the subject of larceny." *Scott v. Commonwealth*, 36 Va. App. 276, 549 S.E.2d 624, 626 (2001) (noting statutory abrogation of common-law principle under Va.Code Ann. § 18.2–192 stating, "[T]he taking of a credit card or a credit card number will be deemed credit card theft.").

While this appears to be a matter of first impression in our court, the Navy has considered the question whether copying numbers imprinted on a credit card, vice actually taking the card, constitutes larceny within the ambit of Article 121, UCMJ. In *United States v. Holley*,[7] Yeoman Holley planned to fraudulently obtain telephone services free of charge using telephone calling card numbers belonging to the shipmate with whom he shared the same sleeping area. The shipmate left his telephone calling cards on his bed. Presented with the opportunity, Yeoman Holley copied the calling card numbers onto a piece of paper, but did not take the actual calling cards. The government charged Yeoman Holley with stealing two telephone calling card numbers under Article 121, UCMJ. The Navy–Marine Corps Court of Criminal Appeals concluded:

> Regardless of the criminal intent with which ... appellant apparently acted at the time he copied the numeric codes[,] ... mere recording of the [card] numbers without taking physical possession of the cards did not constitute larceny or wrongful appropriation within the meaning of Article 121, UCMJ. While the military judge recognized that ... appellant could not providently plead guilty to stealing the cards, themselves, the judge erred in accepting a guilty plea to the theft of a random sequence of numbers that was essentially intangible property and, therefore, not within the ambit of Article 121.

*Holley*, 42 M.J. at 782.

In the case *sub judice*, the military judge found appellant guilty of that part of the larceny specification extending to the theft of "credit card information" based, in part, upon appellant's act of writing down or copying PV2 ML's Visa check card number. As in *Holley*, appellant was not charged with, or convicted of, stealing the card from which he obtained the number, or the paper on which he presumably wrote it. In other words, appellant's act of "stealing" only the numbers imprinted on the Visa check card, and not the card itself, constitutes the essence of the offense with which the government charged appellant and of which the military judge convicted him.

■ Today, we adopt our sister court's conclusion and find appellant's guilty plea to larceny improvident to the extent it is based on appellant copying "credit card information," i.e., a check card number. We also agree appellant prepared to obtain services under false pretenses by copying the card number. *See Holley*, 42 M.J. at 781. However, appellant's act of copying the card number, coupled with his using it to purchase an airline ticket, formed the basis for his convictions for wrongfully using a credit card in violation of the Texas Penal Code (Specification 1 of Charge IV), and attempting to

7. 42 M.J. at 780–81.

obtain services under false pretenses (Specification 2 of Charge IV). We hold appellant's act of copying the numbers imprinted on PV2 ML's check card does not constitute stealing those numbers or the check card itself under Article 121, UCMJ. In this regard, to copy is not to take. We also hold appellant's breaking and entering into PV2 ML's barracks room at night with intent to "find some ... sort of credit card" and "get the [intangible] numbers off of it" does not satisfy the intent element of burglary under Article 129, UCMJ.

Furthermore, we accept the government concession that wrongfully using a credit card in violation of the Texas Penal Code (Specification 1 of Charge IV) reflects an unreasonable multiplication of charges with the offense of attempting to obtain services under false pretenses (Specification 2 of Charge IV). Appellant's wrongful use of PV2 ML's check card number was one step in appellant's overall endeavor to obtain services under false pretenses. Appellant's fraudulent and unauthorized use of the card number he copied enabled him to purchase an airline ticket for which he would otherwise not have to pay. What was substantially one criminal transaction should not have been charged as two separate offenses. R.C.M. 307(c)(4) discussion; *United States v. Quiroz,* 55 M.J. 334, 338–39 (C.A.A.F.2001).

*Conclusion*

The court affirms only so much of the finding of guilty of Specification 2 of Charge II as finds that appellant did, at or near Fort Bliss, Texas, on or about 27 February 2005, steal a pair of gloves, of some value, the property of PV2 [ML], in violation of Article 121, UCMJ.

The court affirms only so much of the findings of guilty of the Specification of Charge III and Charge III as find that appellant did, at or near Fort Bliss, Texas, on or about 27 February 2005, in the nighttime, unlawfully break and enter into PV2 [ML's] barracks room with the intent to steal a pair of gloves therein, in violation of Article 129, UCMJ.

Specification 1 of Charge IV is set aside and that specification is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and the principles of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the court affirms the sentence.

Senior Judge SCHENCK and Judge WALBURN concur.